UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL J. ROBBINS,

           Plaintiff,

     v.

CHECKR, INC.,

           Defendant.

Case No. 19-cv-05717-JST

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING PROCEEDINGS**

Re: ECF No. 21

Before the Court is Defendant Checkr, Inc.'s motion to compel arbitration and dismiss or stay the proceedings. ECF No. 21. The Court will grant the motion.

# I.     BACKGROUND

## A.     Procedural Background

On September 11, 2019, Plaintiff Michael J. Robbins filed a pro se complaint against Checkr, a consumer reporting agency that provides landlords with background checks for potential renters. ECF No. 1 ("Compl."); ECF No. 21-1 ¶ 3. Robbins alleges that Checkr "put out a false background check" that "has me taking guilty plea for kidnapping 2 (a sex offense) when the plea I took is for unlawful [i]mprisonment." Compl. at 3. Robbins alleges that this report has "[c]omplet[e]ly destroyed my [r]eputation in the community" and led to him having "no luck finding jobs and housing." *Id.* at 4. He brings one claim under the Fair Credit Reporting Act. *Id.*; *see also* 15 U.S.C. § 1681, *et seq.*

On March 13, 2020, Checkr filed this motion to compel arbitration and dismiss or stay the proceedings. ECF No. 21. Robbins did not file a response, and the Court took the motion under submission without a hearing. ECF No. 22.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Arbitration Provisions

On September 18, 2018, Robbins accessed Checkr's online "Applicant Portal."  ECF No. 21-1 ¶ 6.  This portal required Robbins to enter personal identifying information, including his social security number and date of birth, before confirming that Checkr had prepared at least one background check report for him.  *Id.*  Before allowing Robbins to view that report or access any other of its services via the portal, Checkr required him to agree to its terms of service ("TOS").  *Id.* ¶ 7.  The portal presented a page that read "[b]efore proceeding, please read through Checkr's Terms of Service below and click the checkbox to acknowledge your agreement."  *Id.* ¶ 8; *id.* at 5.  Directly below this instruction was a scrollable version of the TOS; a checkable box with the statement, "[b]y checking this box, I agree to Checkr's Terms of Service (set forth above), as well as Checkr's Privacy Policy"; and a clickable "continue" button.  *Id.* at 5.  Robbins checked the box and clicked "continue" at 9:59 p.m. on September 18, 2018.  *Id.* ¶ 9.

The TOS in place at the time Robbins took this action contained an arbitration agreement that reads, in relevant part:

> In exchange for the benefits of the speedy, economical, and impartial dispute resolution procedure of arbitration, You and Checkr mutually agree to give up our right to resolve disagreements in a court of law by a judge or jury, and, as described below, agree to binding and final arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

*Id.* at 15.  The agreement further stipulates that it "is governed by the Federal Arbitration Act" and applies, with certain enumerated exceptions, to "any disagreement, claim, or controversy arising out of or relating in any way to these Terms (including its enforcement, breach, performance, interpretation, validity, or termination), or Your access to and/or use of the Services, or the provision of content, services, and/or technology on or through the Services."  *Id.*

The arbitration agreement includes the following "delegation clause":

> If there is a disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement), You and Checkr agree that this threshold disagreement shall be delegated to the arbitrator (not a court) and that the arbitrator shall have initial authority to resolve such threshold disagreements.

*Id.* at 16.  The TOS also allows individuals to opt out of the arbitration agreement within 30 days.

*Id.* at 17.  Robbins did not opt out.  *Id.* ¶ 10.  Lastly, the TOS includes bolded, capitalized warnings about the impact of the arbitration agreement at the beginning of the contract as well as at the beginning of the section in which the arbitration agreement appears.  *Id.* at 7, 15.

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration.  *Id.* § 3.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.    DISCUSSION

Checkr argues that Robbins consented to a valid arbitration agreement contained in its TOS and is thus bound to arbitrate any claims covered by the agreement.  ECF No. 21 at 6.  Checkr further argues that, because the agreement delegates the question of arbitrability to the arbitrator, the Court may not reach the question whether the agreement covers Robbins's claim.  *Id.*  In the alternative, Checkr argues that the agreement does cover the claim.  *Id.*  Either way, Checkr asserts that Robbins's claim must be sent to arbitration.

Because Robbins has not filed a response, the Court is especially mindful of the principle that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Nonetheless, even under this lenient standard, the Court concludes that Robbins's claim must be sent to arbitration.

### A.    Contract Formation

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In California, "[a] party petitioning the court to compel arbitration bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement."  *Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453 (Cal. Ct. App. 2009) (internal citation omitted), *abrogated on other grounds by Concepcion*, 563 U.S. at 339.  Under California law, a contract requires (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) consideration.  Cal. Civ. Code § 1550.  There is nothing in the record to suggest that the first and third elements are not present here.  Because Checkr carries its burden to show consent and consideration, the Court finds that a valid agreement to arbitrate exists via Robbins's September 18, 2018 agreement to the TOS.

Consent is evaluated by an objective standard.  *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. Ct. App. 1972).  To consent to an online contract, a website

United States District Court
Northern District of California

4

user must have actual or inquiry notice of its terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).[1]   The contract at issue here is known as "clickwrap" agreement, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Id.* at 1175-76.  Because they "require an express manifestation of assent to the terms and conditions," *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019), "courts generally find that clickwrap agreements are enforceable," *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015); *see also Nguyen*, 763 F.3d at 1176 (courts have been "more willing to find the requisite notice for constructive assent" for agreements that "resemble[] a clickwrap agreement – that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website").  The Court thus finds that Robbins had notice of Checkr's TOS and consented to the contract by clicking the box agreeing to the TOS.

As for consideration, "[a] written instrument is presumptive evidence of a consideration, and in any event all the law requires for sufficient consideration is the proverbial 'peppercorn.'" *San Diego City Firefighters, Local 145 v. Bd. of Admin.*, 206 Cal. App. 4th 594, 619 (Cal. Ct. App. 2012) (internal citations and quotation marks omitted).  Moreover, a "promise to be bound by the arbitration process itself serves as adequate consideration." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *see also Lockhart v. Gen. Motors Corp.*, No. CV-01-2052-CAS, 2001 WL 1262922, at *2 (C.D. Cal. Sept. 14, 2001) ("[I]t is well settled that mutual promises made by parties to a contract to submit claims to arbitration constitute sufficient consideration to support the agreement.").  Because the arbitration agreement here mutually binds Checkr and Robbins, it is supported by adequate consideration.

The Court thus finds that the essential elements of a contract are present here and that "a valid agreement to arbitrate exists."  *See Chiron Corp.*, 207 F.3d at 1130.

### B.    Delegation

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the

---

[1] While *Nguyen* applied New York law to determine whether a contract had been formed, it noted that California law would have dictated the same outcome.  763 F.3d at 1175.

parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Kaplan*, 514 U.S. at 943 (emphasis in original) (internal citations omitted). Whether the Court or the arbitrator decides arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

The delegation clause here delegates any threshold disagreement "about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement)" to "the arbitrator (not a court)." ECF No. 21-1 at 16. This language is in line with delegation clauses that have been held to clearly and unmistakably demonstrate an agreement to arbitrate arbitrability. *See Mohamed*, 848 F.3d at 1209 (delegating to arbitrator "the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision'"); *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 WL 4334770, at *4-7 (N.D. Cal. Sept. 11, 2018) (delegating to arbitrator "issues relating to the scope and enforceability of this arbitration agreement"). Accordingly, the Court holds that the parties "clearly and unmistakably delegated the question of arbitrability to the arbitrator," *see Mohamed*, 848 F.3d at 1208, who must decide "whether the agreement encompasses the dispute at issue," *see Chiron Corp.*, 207 F.3d at 1130.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to compel arbitration and stays the proceedings.

The parties shall submit status reports to the Court within 180 days of the filing date of this

1  order, and additional joint status reports every 180 days thereafter, apprising the Court of the

2  status of the arbitration proceedings.  Within 14 days of the completion of the arbitration

3  proceedings, the parties shall jointly submit to the Court a report advising the Court of the

4  outcome of the arbitration, and a request that the case be dismissed or that the case be reopened

5  and a case management conference be scheduled.

6        The case management conference scheduled for August 4, 2020 is vacated.

7        **IT IS SO ORDERED.**

8  Dated:  July 30, 2020



          JON S. TIGAR
      United States District Judge

United States District Court
Northern District of California